May it please the Court, Michael Suffern on behalf of Xanodyne Pharmaceuticals. I'll try to be conscious of Your Honor's admonition. Obviously, these cases raise identical issues on CAFA, and so what I'd like to do is to try to address some of the questions that the Court had, perhaps in a slightly different way than my colleague did. And I'd like to start by addressing Your Honor's question regarding NOLS and its admonition, its teaching, that we are to focus on the substance of CAFA and not the form. And the purpose of that was to advance Congress's objective, what NOLS calls its primary objective, which is that federal courts, not state courts, will consider interstate cases of national importance that have very little, if any, connection to the form state. And this, Your Honors, is a textbook example of that kind of case. In Corber, for example, we have two plaintiffs who allege California residency. We have 33 plaintiffs who are not from California. In Corber, we have 35 defendants, only one of which, not a target defendant, not a manufacturing defendant, is from the state of California. And if we're going to do anything to ensure that interstate cases of national importance are where they belong after Congress made the conscious decision to broaden diversity jurisdiction, certainly we still need to strictly construe removal statutes, but that does not change the fact that Congress intended to greatly broaden diversity jurisdiction when it passed CAFA. I agree with that point of what you said so far, but my concern is there's a lot of argument here over what this petition, this 404 petition, you know, really means in trying then to apply CAFA principles to it. And I'm just concerned over the fact that a district judge here has found one interpretation in that regard and seems to distinguish the Abbott case, and I know I'm perhaps getting into what we heard earlier. Again, it's troublesome because I still am concerned over really understanding why the authority of a state judge here in California to say that, oh, look, I will maybe do some bellwether trials, but to the extent that I don't want to do the remaining trials, this could go back to another state judge, in which case would there be CAFA jurisdictions still? There would, Your Honor, because under section 404.1, a coordination trial judge is not appointed unless the judicial counsel determines that one judge hearing all of the actions for all purposes will promote the ends of justice. And if I may, rule 3.541B, the California Supreme Court rules. So is the district judge absolutely wrong in saying that they view this as really to prevent inconsistent rulings on pretrial issues? Well, Your Honor, I think where the district court got it wrong, I mean, certainly that could happen under cases that are coordinated before a single coordination trial judge, but where I think the district court got it wrong, what was in stating that in miscomprehending, misapprehending the definition or the requirement of what a reading proposed to be out of the statute, and this is what Judge Gutierrez said. He said, mass actions are cases in which the monetary claims of 100 or more persons are to be jointly tried. But that's not what the statute says. The statute says, and that reading ignores the plain language of the statute, which says that they are claims where 100 or more plaintiffs are proposed to be tried jointly. And the petition in this case, Your Honors, it states that, quote, without coordination, two or more separate courts will decide essentially the same issues and may render different rulings on liability. It says issues likely to be raised in this action include issues pertaining to liability, allocation of fault, and contribution. And I would submit to Your Honors that it is simply impossible to allocate fault without a trial. So when the plaintiffs propose to bring 1,600 plaintiffs from all over the United States together for the express purpose of raising issues such as the allocation of fault, we clearly fall within the spectrum of where the mass action provision kicks in. There's just no other way to read the statute, and there's no other way to advance the purposes of Congress in enacting the statute. Those, the abuses that Congress sought to cure when it passed CAFA were to keep cases of national importance in federal court. The abuses were that state and local courts were, quote, making judgments that bind the rights of residents of other states. And again, this is, if this is not a textbook example of the kind of proceeding in which that would happen, I cannot imagine what would be. So we believe that the only way to read proposed to be tried jointly must certainly include what we have here. And I think it's important that Tano, excuse me, Abbott from the Seventh Circuit, cites Tano for the proposition that plaintiffs' separate state court actions may, of course, become removable at some later point. Separate state court actions, not consolidated state court actions, but separate state court actions may become removable at some other point. And it's, and Abbott cites Tano for that proposition. And then Abbott says, quote, it does not matter whether a trial covering 100 or more plaintiffs actually ensues. The statutory question is whether one has been proposed. I think it's also very important to focus upon, you know, there's been some suggestion that somehow mass actions and clash actions are different under CAFA, but I would submit, Your Honors, that there's simply no legislative support for that notion, and there's no textual support for it. Indeed, the Senate Judiciary Committee was clear that mass actions are just class actions in disguise. They involve a lot of people who want their claims adjudicated together, and they result in the same abuses as class actions. And I've just discussed with the Court what those abuses were, and they are exactly the kinds of things we have here. The fact that, also, just briefly again, I want to make sure that the Court appreciates the difference between consolidation and coordination under the California regime. Well, the primary difference is that consolidation involves cases that are pending within a single judicial district in California. Coordination is the analogous provision that simply allows the Court to bring together cases that are pending in different judicial districts. So do you agree with the counsel for, in the prior argument, that there virtually is no difference between coordination and consolidation as to the prior argument? I do, Your Honor, and I think that the rules, Supreme Court rules regarding coordination make that absolutely clear. Rule 3.541B says that the coordination trial judge must assume an active role in managing all steps of the pretrial, discovery, and trial proceedings to expedite the just determination of the coordinated actions without delay. Your Honors, if I may, despite Judge Gould's fairly clear opinion that maybe I ought to go here, I'd like to try to nudge off that a little bit on the reviewability of whether the Court is empowered to review the federal question argument. Okay, I hereby reopen my mind for argument. Thank you, Your Honor. It's our position that 1453C1, which explicitly and by its plain language states that this Court is free to review the order granting or denying a case that's reamended under CAFA, that 1453C1 trumps 1447D. It's very similar to this Court's ability to review any interlocutory order, and it's consistent, rather, with this Court's ability to review any interlocutory order under 1292. And as this Court is aware, appellate jurisdiction under 1292 applies to the entire order certified by the federal court. It's not tied to the Court of Appeals, and it's not tied to the particular question that's formulated by the district court. So we would submit that, and nothing in Nevada v. Bank of America is inconsistent with that. Certainly it's factually distinguishable, but the holding is that the Court of Appeals has the discretion to review the order. And that's what this Court has done in granting our CAFA appeal. It now has the discretion, in our view, to review the entire order. And with that in mind, I would submit that there certainly is federal question jurisdiction over these cases. Federal question jurisdiction arises from the fact, and again, I think that this is a point that the district court simply missed in this case when it said, quote, plaintiffs do not allege a cause of action based on the federal duty of breach, of the federal duty of sameness. Quite to the contrary, the only facts, and the gravamen of every alleged state law cause of action that the plaintiff's state arise from these facts, in the Korber complaint, it's paragraphs 5, 6, and 7, the only facts that are alleged in support of their alleged claims of sameness are the state law. The only fact that the plaintiff's state arise from these claims of liability for generic manufacturers is that they violated their duty of sameness. Paragraph 6 says, quote, the generic defendants could have made these labeling changes without running afoul of the requirement of sameness, because federal law expressly permits generic labeling to differ from RLD labeling. That's the allegation. I disagree with the conclusion, but the allegation is that liability against generics in this case arise from their alleged failure to implement certain labeling changes that were, that are completely creatures of federal law. Indeed, you can say, well, I just have a garden variety negligence claim, or you can say I just have a garden variety failure to warn claim, but the plaintiffs, and I challenge them to cite any state law duty that generic drug companies match their drug labeling to the labeling of the reference listed drug, or the branded drug. The only source of that duty is federal statutes and federal regulations, and the case law we would submit is clear that where the allegations require a finding that the defendant failed to perform a statutory duty created under federal law, then the case properly belongs in federal court under federal question, Section 1331 jurisdiction. Did you want to save some time for rebuttal?  All right. Thank you, counsel. We'll hear from plaintiff's counsel again. Hopefully not the same thing. I will do my best, Your Honor. Again, Stuart Essner for plaintiffs. Since it has come up several times, I think it's worth noting that Standard Fire v. Knowles, which is the U.S. Supreme Court opinion on CAFA that came out a few months ago, concerned a very narrow issue of whether or not a class representative prior to class certification could still be considered to be a class representative. The court stipulated that the amount in controversy was less than the jurisdictional amount sufficient to invoke CAFA, and the court said that class representative could not so stipulate because the class representative cannot speak for the other class members. That's the holding of Standard Fire v. Knowles. Of course, very little to do with the issue now presented to this court. Defendants like that case only because it found that CAFA happened to be a class representative. It found to apply to the claims in that case. Otherwise, it has no application here concerning the mass action provision of CAFA. I've heard now that there's agreement that the provisions of the removal section in CAFA need to be strictly construed. What does that mean? That means it's construed against removal, against federal jurisdiction. And here, when we have a phrase, proposed to be tried jointly, that was interpreted by this district court in relation to the petition to coordinate, and by numerous other district courts in California, all of whom looking at virtually identical petitions to coordinate, have concluded that there was no proposal to be tried jointly. And consequently, I think it becomes evident that under any construction, let alone a strict construction, the plaintiffs in this case did not propose their action to be tried jointly. There was the argument, well, look at the fact that CAFA contains a provision accepting coordination solely for pretrial purposes. I think it is important to look at that. And the reason why is Congress's use of the term or the word pretrial in the very same section reflects that Congress drew a dichotomy between trial and pretrial. And there is no other way of reconciling the use of those two terms except to conclude that when Congress used the word pretrial in the exception, it meant all proceedings prior to the actual commencement of trial. I.e., that the calling of a witness, the impaneling of a jury, et cetera. So that when you look at that definition in the context of the term proposed to be tried jointly, where in the petition to coordinate in this case did the plaintiffs propose that 100 or more plaintiffs are to have their case tried jointly, i.e., before the same jury at the same time. That's what Congress said. Now, if it doesn't make sense that Congress said that, if it makes more sense in keeping with the claim policy behind CAFA for Congress to have said something else, of course, that's a matter to take up with Congress and not the courts. Congress has spoken. Do you agree that under California law, these procedural devices for consolidation versus coordination would ultimately have the same purposes, interpreted the same way by the judge that selected to consolidate or coordinate? Well, in a consolidation, the actions are deemed unified, my understanding of California law. And this hasn't been briefed, so I'm a little bit off, out of school here. But perhaps. But consolidation is for all, you know, there could be consolidation for all purposes, for some purposes under California law. Typically, actions are consolidated when they are within the same judicial district, whereas in coordination they're from various judicial districts and they tend to have a looser affiliation. So if it's the same effect, let's say the petition says for all purposes, or request for consolidation, our coordination says for all purposes, does that make sense? Am I wrong in interpreting CAFA to the extent that if it said, if the defendant said, or you had requested consolidation, would CAFA cover that? If there was 100 or more plaintiffs who proposed to have their trial joint, proposed a joint trial under the vehicle of a consolidation, I'd have to look at the section. The reason I'm using that language, consolidation, is isn't that what Tano turned on? Tano turned on the fact that there wasn't a request to consolidate the, I believe, the actions of more than 100 plaintiffs for trial, or 100 or more plaintiffs for trial. I believe that's the holding of Tano, that the defendants were claiming that, in fact, that's what would ultimately happen and they would be able to propose that. But the court said that's not what Congress said in CAFA, that it would have to be the plaintiffs who proposed, that there actually be a trial of 100 or more plaintiffs for consolidation, is my recollection of what Tano holds. And that is not the case here, where we have not proposed a trial of 100 or more plaintiffs. And I started to talk about the abuses in the case of Tano. I started to claim that this, you know, would have, would serve the same, you know, purpose of CAFA, if the court were to nevertheless conclude that simply because these cases were coordinated for all purposes, to conclude that, in fact, that meant that they were coordinated, or that they were proposed to be tried jointly. And, again, looking at the coordination statute, California Code of Civil Procedure, Section 404.1, the all-purpose language is that they were taken out of context. It's one judge hearing all the actions for all purposes in a selected site. So the focus is not on the trial. It's on the judge. And under CAFA, there has to be an express proposal by the plaintiffs for a trial of 100 or more plaintiffs. That is simply not the case here. The fact that the coordination, the interests of coordination under California law are to avoid inconsistent rulings or decisions doesn't mean that is of legal consequence under CAFA, because there is no, there is no California principle that allows for spillover effect from one bellwether trial to subsequent trials. And now I feel like I'm repeating, so I'll stop right there. But the fact is, this is not a trial for all, by 100 or more plaintiffs. Finally, the argument was made that, you know, that class actions are simply, or mass actions, I should say, are simply class actions in that the fact remains that Congress specifically crafted a statute where it provided for very specific requirements with respect to class actions and other very specific requirements as to mass actions. And class actions and mass actions are very different in one very significant way. In a class action, it's a representative action, where by definition the result is going to be binding even on those claims. It's the jury's determination of the action as a class action that will subsequently have impact, legal impact, on the claims of all of the class members. That's not true under California's coordination statute. It simply is not the case that that legal effect of a decision in a trial of less than 100 plaintiffs in a coordination statute, in a coordination case, is going to have the same legal impact as in a class action. So when Congress said, 100 or more, we have to take it at its word, that's what it meant. If it's the rare case that will be where Catholic jurisdiction exists under that provision, so be it. It may be the rare case, but that's what Congress said, and that's what should control in this case. I don't know if the Court wants me to address the alternative basis for jurisdiction. I don't know if the Court wants me to address the alternative basis for jurisdiction. I know the Court's mind has reopened, but if... At least one member of the panel has a reopened mind. I would be happy to address that if the Court wants me to. I think since my mind was reopened, that I think you may as well address it. Okay. So the argument was that somehow the fact that, well, first of all, again, and I won't repeat for the reasons stated in my earlier argument, it's our position that in fact the Court lacks jurisdiction because of the alternative basis in an appeal from an order granting remand as opposed to an order denying remand. They're very different animals for very important reasons, and in any event, the Court has discretion to decline to review the alternative basis and should exercise that discretion because the whole purpose behind allowing Catholic appeals is to develop a body of case law concerning Catha and not these other removal issues, which Congress specifically has already said are not reviewable on appeal. Beyond that, it's our position that there is no federal jurisdiction here. The fact that there's the claims against the labels in this case and the allegations that were referenced are reasons why the federal preemption doesn't exist. The assertion was made, well, there's no proposition under California law that provides for liability in this case outside of those federal statutes. The reality is there is. A well-developed body of California law providing that inadequate warning can be a basis for liability. It's the plaintiff's case in this action, this label was inadequate, and a reason why that there's no preemption is based upon the allegations that were referenced by the defendant. Finally, the fact is that, as the district court noted in its opinion, this case is basically identical to Merrill Dell Pharmaceuticals v. Thompson, where the court, Supreme Court, relying upon precisely the same federal jurisdiction. The federal statute as relied upon here concluded that even though the plaintiff's claims referenced that federal statute, there was no federal subject matter jurisdiction. The court concluded, and I quote, that a complaint alleging violation of a federal statute as an element of a state cause of action when Congress has determined that there should be no private federal cause of action for the violation does not state a claim arising under the Constitution laws or treaties of the United States. So even if the court were to reach the federal subject matter jurisdiction issue, the district court got it spot on in concluding that under the Supreme Court's decision in Merrill, there was no subject matter jurisdiction here. Unless the court has any other questions, I'll submit. Thank you, counsel. First, on the question of, on the representation that the Knowles case stands for a very limited amount in controversy issue, that certainly was the issue in Knowles, but the whole thrust of the decision is that we cannot permit plaintiffs to artificially structure their complaints in a way that is intended to avoid the possibility that Congress chose to broaden when it enacted CAFA. It was the plaintiff's gamesmanship and manipulation through the purported stipulation in Knowles that led the Supreme Court to decide that the plaintiffs were playing jurisdictional games, and that's exactly what we have here. We have here 40 different lawsuits where plaintiffs group, where plaintiffs counsel group the plaintiffs together alphabetically. There's absolutely no rational basis for grouping them other than to keep them under the jurisdictional threshold that would convey, in their mind, would be the only way to convey jurisdiction under CAFA. On the point that the only time CAFA kicks in is where there's a simultaneous adjudication before a single trier of fact of the claims of 100 or more people, I mean, no case in the entire CAFA jurisprudence has ever held that. Even Bullard, where there were 144 plaintiffs in the complaint, the plaintiffs said the same thing that the plaintiffs here are saying. They said, we didn't ask for a trial. We just filed a complaint. Nobody knows what the trial is going to look like until later. So the fact that it's clear that no case under CAFA has ever required there to be some simultaneous adjudication, of 100 or more plaintiffs' claims before a single trier of fact, what's important is that there be one proceeding. That was the holding of Bullard, that there's one proceeding, and we clearly have that here. We have one proceeding that is proceeding apace in Judge Burrell's courtroom in Los Angeles with 1,500 plaintiffs, 1,600 plaintiffs from all over the United States, with 35 defendants from all over the United States, only one of which is from the State of California.
judges: Lemelle, Gould, Rawlinson